UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

               Plaintiff,                      CR. NO. 24-CR-20375

      v.                                Hon. F. Kay Behm

MACK DAVIS,

               Defendant.

                                  /

## **RESPONSE TO GOVERNMENT'S SUPPLEMENTAL BRIEF**

The Court is tasked with sentencing Mr. Davis. That determination must include an individualized assessment of Mr. Davis, his offense, and the 3553(a) factors as they relate to this case. Instead, the government is asking the Court to redirect its focus to two completely unrelated terrorist attacks that occurred in March, 2026, two weeks after the United States launched an attack on Iran. The government is essentially asking the Court to ignore the facts of this case and the unique history and characteristics of Mr. Davis, make unreasonable inferences based on *one* person committing an act of terrorism after coming out of prison for a related charge, and come to the conclusion that a guidelines sentence is the only way to prevent Mr. Davis from doing the same thing. Not only is the government's argument unpersuasive, the information provided by the government supports the defense's argument that intervention, not prison, is the best way to protect the public in this case.

In its argument, the government primarily focused on sentencing arguments that were made at Mohamed Jalloh's sentencing in a 2016 terrorism case and the news articles stating that Mr. Jalloh committed a shooting at ODU on March 12, 2026 to support its position. While it is true that Mr. Davis and Mr. Jalloh made some similar arguments at sentencing, two of the most critical

1

considerations in this case, Mr. Davis's youthfulness and the suicidal crisis he was experiencing, were not present in Mr. Jalloh's case. In fact, Mr. Jalloh had served six years in the military when he was charged in a terrorism case. (E.D. Va. 26-cr-00163, R. 48: Govt. Sent. Mem., PgID 258). He was using hard drugs at the time. (E.D. Va. 26-cr-00163, R. 49: Def. Sent. Mem., PgID 283). Mr. Jalloh's underlying motivation for getting involved was significantly different, as he was seeking a reward from Allah and for his sins to be forgiven. (E.D. Va. 26-cr-00163, R. 48: Govt. Sent. Mem., PgID 252). In Mr. Jalloh's attempts to join ISIS, he participated in both domestic and international travel, and provided money to the cause. (*Id.* at 249-252). Mr. Jalloh was brought to the attention of law enforcement because he started interacting with a confidential informant. He was arrested after buying a gun to give to the informant. (*Id.* at 251-252). Mr. Davis was in a much different situation. He very rarely ever left his bedroom and was in a suicidal crisis when he was brought to the attention of law enforcement. He smoked weed, but did not use other drugs. While the government argues that Mr. Davis's "hatred of all people" and "desire to kill anyone he encountered" warrants a lengthy sentence, he did not kill anyone when he was home alone and had every opportunity to do so.

The defense agrees with the government on one point—Mr. Jalloh's recidivism is a warning siren, but not for the reasons the government stated. Mr. Jalloh's case highlights the importance of providing the intervention that Mr. Davis needs, protecting him from the dangers in the BOP, and giving him extensive supervision and intensive treatment. Those arguments were not made in Mr. Jalloh's case. Mr. Jalloh was sentenced to 132 months in prison, which is just three months less than the bottom of the guidelines in Mr. Davis's case. In Mr. Jalloh's case, his attorney asked for the only treatment programs available through the BOP—the residential drug treatment program and extra time in the halfway house to reintegrate into society. The government noted that Mr.

2

Jalloh was on supervised release at the time of the recent attack, but it failed to mention that his probation officer was only seeing him every six months.[1]

The reality of the situation is that prison was not an effective way to protect the public in Mr. Jalloh's case. It sounds like Mr. Jalloh had a very hard life. The government points out that he made arguments about childhood trauma, feeling rejected, and isolation at his sentencing. What if Mr. Jalloh had been offered adequate treatment instead of being placed in a violent prison environment? While we have provided the Court with research and support for our argument, the government has not provided any evidence to show that prison is an effective way to reduce recidivism upon release in cases like Mr. Davis's or otherwise.

As the government pointed out, Dr. Saragoza's report did not provide a specific risk level for future violence. It provided something much more meaningful—it included specific details about the treatment Mr. Davis needs and highlighted the factors that contributed to Mr. Davis ending up here. If the ultimate goal is protection of the public, the BOP environment is a very important factor to consider when determining the sentence in this case.

The government made an important point in its brief that "hate filled ideology is not erased by expressions of remorse or promises of change." Similarly, it is not going to be erased by spending day after day in an extremely violent environment in prison where there is no safety or meaningful treatment. The BOP is designed to fuel violence, often inflicting trauma and causing significant changes to the brain and nervous system.[2] Working with clients who have spent months, years, or decades in prison, we repeatedly hear stories from people who have trauma-related symptoms associated with the prison environment. It is not unusual for people to be constantly on edge, looking for danger, afraid to stand up and go to the bathroom due to being sexually assaulted

[1] Old Dominion Shooter Was Released From Prison Early After Completing Drug Program
[2] *See* How Does PTSD Affect the Brain? The Physical Effects of Trauma

in prison, and pacing the exact length of a cell or responding in an irrational way when their nervous system is dysregulated. It is not a good environment for anyone, including the staff, but it is particularly dangerous for someone like Mr. Davis who has a developing brain and a history of severe trauma, suicidality, and susceptibility to radicalization.

Mr. Davis has been in custody since June 2024. He spent almost two years in county jail before being moved to the Federal Detention Center at Milan on March 3, 2026. Since then, he has been threatened and extorted, witnessed multiple fights, and been offered drugs. Within the first week of being at Milan, an officer warned Mr. Davis not to talk to a person he had been in the county jail with because it is not safe to be associated with "sex offenders." Instead, he was encouraged to associate with people with violent cases and drug cases. Drugs are rampant, increasing the risk of danger to the person taking them and the risk of violence due to impaired judgment and decision-making. Someone just recently got in trouble for having k-2 that was believed to be mixed with fentanyl. In the past six weeks, there have been multiple fights and a stabbing. Mr. Davis witnessed someone get jumped and beat with socks with master locks inside of them. He is afraid to go to sleep. On the other hand, he has already had people at Milan praising him for his charges.

The dangerousness and extortion in the BOP is layered, with every minor basic need having the potential to quickly turn into a violent situation. Everyone is in survival mode. Phone calls, extra clothes, cough drops, and other basic necessities all cost money.[3] Inmates are paid around 12 to 40 cents an hour for some jobs,[4] such as doing other inmates' laundry, resulting in the people doing those jobs having a significant amount of control over other inmates' basic daily needs. The person doing the laundry will often ask for a five-dollar fee to return laundry in a timely manner

---

[3] mil_commlist.pdf
[4] BOP: Work Programs

as a way to provide for their own basic needs. Because there is no real opportunity to make enough money to pay for one's own personal items, people in the BOP are entirely reliant on financial support from family, if they have any. People are separated from their families, and often lose access to the positive support systems they need to be successful due to their family not having the money to pay for phone calls or gas to visit. In many cases, people have to choose between calling family or using the money for things they need. This is just a small snapshot of how extortion and control permeate these facilities on a daily basis, frequently leading to violence. With the specific facts here, it could be very dangerous for Mr. Davis to spend a decade in that environment.

Mass shootings, acts of terrorism, and other violent acts have a major impact on our communities at many different levels. Protection of the public is a very important factor the Court has to consider, but prison is not the way to do that. There are a variety of alternatives to incarceration that are effective.[5] Courts have taken all kinds of different approaches in serious cases with teenagers and young adults specifically. For example, a week ago, a twenty-year old who was accused of planning a mass shooting at a high school graduation in Pontiac, MI last year was given three years of probation with 90 days in the MDOC bootcamp.[6] In Mr. Davis's case, both the government and the defense asked for five years of supervised release, which is a form of punishment. Upon release from custody, Mr. Davis could participate in meaningful treatment while complying with strict conditions and being regularly supervised by probation and his mother.

Respectfully Submitted,

DATED: April 15, 2026

/s/ Jaelle Richardson
Jaelle Richardson (P84470)

/s/ Bryan Sherer
Bryan Sherer (P69254)
Attorneys for Mack Davis

---

[5] *See What Do Alternatives to Incarceration Actually Look Like? | Vera Institute*
[6] Suspect involved in 2025 plot to shoot up Michigan high school graduation sentenced - CBS Detroit